UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTH AMERICAN HERB AND SPICE CO. LTD. LLC, <br><br> Plaintiff, <br><br> v. <br><br> PAGES OF PURPOSE LLC, <br><br> Defendant. | Case No. _____ |

# COMPLAINT

Plaintiff North American Herb and Spice Co. Ltd. LLC ("NAHS"), by and through their undersigned counsel, hereby complains of Pages of Purpose LLC ("Defendant"), and for their Complaint hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the law of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant directly targets consumers in the United States, including Illinois, through multiple fully interactive on-line commercial marketplaces/web pages. Specifically, Defendant is reaching out to do business with Illinois residents by operating one or more fully interactive on-line commercial marketplaces/web

pages through which Illinois residents can purchase products, which bear, counterfeit versions of Plaintiff's trademarks, and which otherwise infringe Plaintiff's trademarks and trade dress. Defendant has targeted sales from Illinois residents by operating on-line commercial marketplaces/web pages that offer shipping throughout the United States, including Illinois, and accept payment in U.S. dollars. Upon information and belief, Defendant has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois and has otherwise sold products to residents of Illinois that infringe Plaintiff's trademarks and trade dress. Upon information and belief, Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in Illinois.

**INTRODUCTION**

3.  This action has been filed by Plaintiff against Defendant, an online counterfeiter, who trades upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's NORTH AMERICAN HERB AND SPICE and OREGANOL trademarks and related trade dress. Said trademarks are covered by Plaintiff's U.S. Trademark Registration Nos. 5,730,830 (NORTH AMERICAN HERB AND SPICE; standard character mark); 5,635,811 (NORTH AMERICAN HERB AND SPICE; stylized mark); and 5,334,716 (OREGANOL; standard character mark) said registrations encompassing use of said marks in connection with, variously, *inter alia*, [d]ietary and nutritional supplements," "[n]atural dietary supplements," and "[n]atural dietary supplements containing oregano" (the "NAHS Marks"). These registrations are valid, subsisting, and in full force and effect. True and correct copies of the certificates for these federal trademark registrations are attached hereto as Exhibits 1 (Registration No. 5,730,830), 2 (Registration No. 5,635,811), and 3 (Registration No. 5,334,716). NAHS has continuously been using the NAHS Marks in commerce in all or many of the 50 states, including

Illinois, since at least as early as 1999 in connection with the promotion, sale, and shipping of, *inter alia*, natural medicines.

4. NAHS has also been continuously using in commerce, since 1999, a number of other marks with respect to which, while not currently federally registered, NAHS nonetheless holds common law rights in, in all or many of the 50 states, including Illinois. Such continuous, on-going, use has, at all times, been in connection with, *inter alia*, the promotion, offering for sale, sale, and shipment of natural medicines. These marks include, without limitation, OIL OF, SUPER STRENGTH, and P73. These marks are referred to herein collectively as Plaintiff's "Unregistered Marks."

5. NAHS has continuously, since 1999, used a distinctive and non-functional trade dress (the "NAHS Trade Dress") in connection with the marketing and sale of its oregano oil-based natural medicinal products. Said trade dress consisting of a blue, yellow, and white color combination together with the NAHS marks, and a series of (darker) blue and yellow bars.

6. Defendant creates the appearance that it is selling genuine versions Plaintiff's products. In reality, however, Defendant is selling inferior, unauthorized, imitations.

7. Defendant attempts to avoid liability by concealing its identity and the full scope and interworking of its illegal counterfeiting operations. Plaintiff has been forced to file this action to combat Defendant's counterfeiting of Plaintiff's federally registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized imitations of NAHS's products on-line.

8. Plaintiff has been and continues to be irreparably harmed due to consumer confusion as a result of Defendant's actions complained of herein and seeks injunctive and monetary relief.

9. Said harm to Plaintiff is not compensable by monetary damages.

10. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which Defendant stands accused were, upon information and belief, undertaken in significant part in Illinois and in this Judicial District. Additionally, Defendant has offered counterfeit and infringing product for sale into this Judicial District.

## THE PLAINTIFF

11. Plaintiff NAHS is a limited liability company organized and existing under the laws of the State of Illinois.

12. NAHS is the lawful owner of the NAHS Marks and the associated registrations for those marks, U.S. Trademark Registration Nos. 5,730,830; 5,635,811 and 5,334,716.

13. NAHS is the lawful owner of the Unregistered Marks.

14. NAHS is the lawful owner of the NAHS Trade Dress.

15. NAHS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the NAHS marks, the Unregistered Marks, and the NAHS Trade Dress. As a result of these efforts, products associated with the NAHS marks, the Unregistered Marks, and the NAHS Trade Dress are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from NAHS.

16. The NAHS marks, the Unregistered Marks, and the NAHS Trade Dress are distinctive and identify the merchandise in connection with which they are used as goods generated by NAHS.

17. The standard character NORTH AMERICAN HERB AND SPICE mark (Registration No. 5,730,830) has been continuously used since at least as early as 1999 in connection with the and has never been abandoned.

18. The stylized NORTH AMERICAN HERB AND SPICE mark (Registration No. 5,635,811) has been continuously used in commerce since at least as early as 2007 and has never been abandoned.

19. The OREGANOL mark (Registration No. 5,334,716) has been continuously used in commerce since at least as early as 1999 and has never been abandoned.

20. The NAHS Trade Dress has been continuously used in commerce since at least as early as 1999 and has never been abandoned.

21. The OIL OF Unregistered Mark has been used continuously in commerce since at least as early as 1999 and has never been abandoned.

22. The SUPER STRENGTH Unregistered Mark has been used continuously in commerce since at least as early as 1999 and has never been abandoned.

23. The P73 Unregistered Mark has been used continuously in commerce since at least as early as 1999 and has never been abandoned.

24. The NAHS Trade Dress is non-functional. The design features embodied by the NAHS Trade Dress are not essential to NAHS's products or the packaging thereof, do not make the products or the product packaging less expensive or easier to manufacture, and do not affect the quality of NAHS's products or product packaging. The design features of the NAHS Trade Dress are not a competitive necessity. The design features of the NAHS Trade Dress serve no purpose other than an assurance that NAHS is the source of the products.

**THE DEFENDANT**

25. Upon information and belief, Defendant Pages of Purpose LLC is a limited liability company organized and existing under the laws of the State of Maryland.

26. Defendant conducts business throughout the United States, including, upon information and belief, within Illinois and in this Judicial District, through fully interactive on-line commercial marketplaces/web pages. Upon information and belief, Defendant targets customers throughout the United States, including Illinois, and has offered to sell and has sold, and continues to sell, counterfeit NAHS products to consumers throughout the United States, including, upon information and belief, within Illinois and in this Judicial District.

27. Since long before the acts complained of herein, NAHS has continuously used in commerce the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress. Examples of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress are set forth below.

 

28. NAHS has, since 1999, been marketing and selling oregano oil-based natural medicinal products directly to consumers as well as through wholesalers and retailers; said retailers including both online retailers as well as brick-and-mortar businesses.

29. Through NAHS's widespread use and promotion of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, NAHS has achieved common law rights, throughout all or many of the 50 states (including Illinois), in the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, and the use thereof in connection with the promotion and sale of natural medicinal products. Additionally, NAHS owns the federal trademark registrations identified above for the NAHS Marks.

30. NAHS has invested substantial sums of money, as well as substantial amounts of time, effort, and other resources, to developing, advertising, and otherwise promoting the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress.

31. NAHS has amassed tremendous consumer goodwill throughout the United States, including in its home state of Illinois.

32. As a result of the care and skill exercised by NAHS in the conduct of its business, the high quality of its products offered under the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, and the extensive advertising, sale and promotion of NAHS's products in connection with the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, said trademarks and trade dress have acquired great value as designating that NAHS is the source of goods bearing such marks and trade dress. Customers in this Judicial District and elsewhere readily recognize the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress as distinctive designations of origin denoting NAHS and its products. The NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress are intellectual property assets of enormous value as symbols of NAHS and its high quality products, reputation, and goodwill.

## DEFENDANT'S UNLAWFUL CONDUCT

33. NAHS's success in the market for natural medicinal products has resulted in counterfeiting by others. Plaintiff has identified multiple instances of Defendant offering for sale and selling counterfeit NAHS products to consumers.

34. Defendant deliberately intended to trade off of the positive goodwill associated with the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress.

35. Websites selling counterfeit goods are estimated to receive tens of millions of visits per year and are estimated to receive $135 billion a year in annual on-line sales. According to an intellectual property rights seizure report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2018 was over $1.39 billion. On-line counterfeiting is also estimated to contribute to tens of thousands of lost jobs for legitimate business and broader economic damages such as lost tax revenue every year.

36. Upon information and belief, Defendant facilitates sales by presenting the products in a manner such that they appear to unknowing consumers to be genuine NAHS products. Many of the on-line venues through which Defendant sells its counterfeits exhibit indicia of authenticity such as indications that they accept payment in U.S. dollars via credit cards, Western Union, and PayPal. The manner in which Defendant presents its counterfeit products makes it virtually impossible for consumers to distinguish such counterfeits from authentic products.

37. Plaintiff has not licensed or authorized Defendant to use the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress and Defendant is not an authorized retailer of genuine NAHS products.

38. Upon information and belief, Defendant also deceives unknowing customers by using the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress without authorization within the context, text, and/or meta-tags of their web pages to attract various search engines crawling the Internet looking for websites relevant to consumer searches for NAHS products. Additionally, upon information and belief, Defendant uses other search engine optimization tactics so that its listings show up at or near the top of relevant search results and misdirect consumers searching for genuine NAHS products. As such, Plaintiff also seeks to disable the listings through which Defendant has been offering for sale the counterfeit products that are the means by which Defendant could continue to sell counterfeit NAHS products.

39. Defendant, in connection with certain online marketplaces, conceals its identity and/or location. Upon information and belief, Defendant regularly creates new on-line commercial marketplaces/web pages on various platforms. Such registration patterns are, upon information and belief, one of several tactics used by Defendant to conceal its identity, the full scope and interworking of its massive counterfeiting operation, and/or otherwise to avoid being shut down.

40. Even though Defendant operates under multiple fictitious names, the counterfeit NAHS products for sale by Defendant share common discrepancies relative to NAHS's genuine products, suggesting that the counterfeit NAHS products were manufactured by and come from a common source.

41. Photographs showing these discrepancies are set forth below. In each of the photos, the bottle on the left is the counterfeit. The close ups of the counterfeit bottle highlights the mistakes made by Defendant when trying to reproduce NAHS's label. On the front of the bottle, the color blue is a different shade (darker) on the counterfeit and there are slight variances in the boldness and size of the words in the blue and yellow bars under the brand name. On the back of

the bottle, in regards to the composition of the product, the label on the counterfeit indicates "P72" instead of "P73," the latter being the correct reference as set forth on genuine NAHS product. Additionally, the web address indicated on the counterfeit is mis-spelled; it reads "www.oraganol.com" instead of the correct spelling, "www.oreganol.com."





42. Defendant in this case, and defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendant will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit having been initiated against them. Counterfeiters also often move web site hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rouge servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities to minimize detection by U.S. Customs & Border Protection. A 2012 U.S. Customs and Border Protection Report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express couriers.

43. Further, counterfeiters such as Defendant typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue to operate in spite of enforcement efforts. Counterfeiters often maintain off-shore bank

accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of the Court. Analysis of PayPal transaction logs from previous similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to bank accounts in regions outside the jurisdiction of this Court.

44. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continue to use the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress in connection with the advertising, distribution, offering for sale, sale, and shipment of counterfeit NAHS products into and throughout the United States, including, upon information and belief, into Illinois, over the Internet. Defendant offers shipping throughout the United States, including Illinois and Defendant has offered to sell counterfeit NAHS products within the United States, including Illinois.

45. Defendant's use of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress in connection with advertising, distribution, offering for sale, sale, and shipment of counterfeit NAHS products is likely to cause and has caused confusion, mistake, and deception by and among consumers, and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

46. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1-45 above.

47. Defendant has engaged in the unauthorized use in commerce of counterfeit imitations of the NAHS Marks in connection with the advertising, distribution, offering for sale, sale, and shipment of infringing goods. The NAHS Marks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the NAHS Marks.

48. Defendant has sold, offered to sell, marketed, distributed, shipped, and advertised, and is still selling, offering to sell, marketing, distributing, shipping, and advertising, products in connection with the NAHS Marks without Plaintiff's permission.

49. Plaintiff NAHS is the registered owner of the NAHS Marks. The United States Registrations for the NAHS marks (Exhibits 1, 2, and 3) are in full force and effect. Upon information and belief, Defendant has knowledge of Plaintiff's rights in the NAHS Marks and is willfully infringing and intentionally using counterfeits of the NAHS Marks. Defendant's willful, intentional, and unauthorized use of the NAHS Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

50. Defendant's activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

51. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, sale, and shipment of counterfeit NAHS products.

52. Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their business reputation and to the goodwill of their well-known NAHS Marks.

**COUNT II**
**TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

53. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1-52 above.

54. As a result of the widespread use and promotion of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, said trademarks and trade dress have acquired strong fame and secondary meaning to consumers and potential consumers in that consumers and potential consumers have come to associate the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress with NAHS.

55. Defendant has infringed the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, and has created a false designation of origin, by using in commerce, without NAHS's permission, confusingly similar marks and design elements.

56. Defendant's unauthorized use of marks and design elements confusingly similar to the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress in connection with its goods constitutes a false designation of origin, a false or misleading description of fact, and false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection or association of Defendant's products with NAHS and the origin, sponsorship or approval of Defendant's products by NAHS.

57. The aforesaid acts constitute trademark infringement, trade dress infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

58. Defendant's acts constitute willful and intentional infringements of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, and Defendant undertook such course of action with the intent to trade upon NAHS's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's products are associated with, sponsored by, approved by, or originating from NAHS, when they are not.

59. Defendant had actual knowledge of NAHS's ownership and prior use of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress, and without consent of NAHS, willfully violated 15 U.S.C. § 1125(a).

60. Defendant has acted in bad faith and/or willfully in using marks and design elements confusingly similar to the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress.

61. Defendant's infringing acts have caused and will continue to cause NAHS to suffer irreparable injury to its reputation and goodwill. NAHS does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

62. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1-61 above.

63. Defendant has engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit NAHS products as those of Plaintiff causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine NAHS products, representing that its products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

64. The foregoing acts undertaken by Defendant constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

65. Plaintiff has no adequate remedy at law, and Defendant's conduct has caused Plaintiff to suffer damage to its business reputation and goodwill. Unless Defendant is enjoined by

the Court, Plaintiff will continue to suffer irreparable harm as a result of Defendant's unlawful activities.

## COUNT IV
## COMON LAW TRADEMARK AND TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

66. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1-65 above.

67. NAHS has acquired common law rights in the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress in all or many of the 50 states, including Illinois, by virtue of its longstanding continuous use of said trademarks and trade dress in commerce throughout such states.

68. Defendant has deliberately and maliciously adopted and used the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress.

69. Defendant's infringement of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress has caused and, unless enjoined, will continue to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of its goods and services with those of NAHS, or as to the approval, sponsorship, or endorsement of Defendant's products and services by NAHS.

70. As a result of Defendant's wrongful conduct, NAHS has suffered and will continue to suffer damages.

71. Defendant's wrongful conduct is also causing NAHS irreparable injury, for which NAHS has no adequate remedy at law.

72. Defendant's infringement is willful.

**PRAYER FOR RELIEF**

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with Defendant be temporarily, preliminarily, and permanently enjoined and restrained from:

   a) Using the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, sale, or shipment of any product that is not a genuine NAHS product or is not authorized by Plaintiff to be sold in connection with said trademarks and trade dress;

   b) Passing off, inducing, or enabling others to sell or pass off any products as genuine NAHS products (or any other products produced by Plaintiff) that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the NAHS Marks, the Unregistered Marks, or the NAHS Trade Dress;

   c) Committing any acts calculated to cause consumers to believe that Defendant's counterfeit NAHS products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d) Further infringing the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress and damaging Plaintiff's goodwill;

   e) Otherwise competing with Plaintiff unfairly in any manner;

    f) Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the NAHS Marks, the Unregistered Marks, or the NAHS Trade Dress, or any reproductions, counterfeit copies, or colorable imitations thereof;

    g) Using, linking to, transferring, selling, exercising control over, or otherwise owning any domain name or marketplace account that is being used to sell or is the means by which Defendant could continue to sell counterfeit NAHS products; and

    h) Operating and/or hosting any website/web page registered or operated by Defendant that is involved with the distribution, marketing, advertising, offering for sale, sale, or shipment of any product bearing the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine NAHS product or not authorized by Plaintiff to be sold in connection with the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress; and

2) That Defendant, within 14 days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant has complied with Paragraph 1, a. through h. above;

3) Entry of an Order that, at Plaintiff's choosing, the registrant of all domain names used in connection with the marketing and/or offering for sale of counterfeit NAHS products

shall be changed from the current registrant to Plaintiff, and that the domain name registries for such domain names shall unlock and change the registrar of record for such domain names to a register of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer said domain names to a register of Plaintiff's selection; or that the same domain name registries shall disable said domain names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces, social media platforms, Internet search engines, web hosts for any of Defendant's domain names, and domain name registrars, shall:

   a. disable and cease providing services for any accounts through which Defendant engages in the marketing or sale of counterfeit NAHS products using the NAHS Marks, the Unregistered Marks, and/or the NAHS Trade Dress;

   b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit NAHS products using the NAHS Marks, the Unregistered Marks, and/or the NAHS Trade Dress; and

   c. take all necessary steps to prevent links to any domain names owned or controlled by Defendant from displaying in search results, including, but not limited to, removing links to said domain names from any search index; and

5) That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the NAHS Marks, the Unregistered Marks, and the NAHS Trade Dress

be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. §§ 1117.

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the NAHS Marks;

7) That Plaintiff be awarded their reasonable attorneys' fees and costs;

8) Award any and all other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues raised by this Complaint that are so triable.

Date: February 13, 2020

    Respectfully Submitted,

    /s/ Theodore J. Chiacchio
    Scott Nyman
    Theodore J. Chiacchio (Of Counsel)
    **Nyman IP LLC**
    20 N. Upper Wacker Drive, #1200
    Chicago, IL 60606
    Tel: (312) 487-2532
    Email: ted@nymanip.com

    *Counsel for Plaintiff North American Herb and Spice Co. Ltd. LLC*